533 So.2d 821 (1988)
ANTHONY ABRAHAM CHEVROLET COMPANY, INC., Appellant,
v.
COLLECTION CHEVROLET, INC., General Motors Corporation, and Department of Highway Safety and Motor Vehicles, Appellees.
No. 88-251.
District Court of Appeal of Florida, First District.
October 13, 1988.
Rehearing Denied December 9, 1988.
Jose E. Martinez and Rosanne Lucia Olmstead of Martinez & Mattox, Coral Gables; John Radey, Mark Freund, and Michael West of Aurell, Fons, Radey & Hinkle, Tallahassee, for appellant.
Dale Heckerling, Miami, for appellee Collection Chevrolet, Inc.
Dean Bunch of Rumberger, Kirk, Caldwell, Cabaniss, Burke & Weschler, Tallahassee, and Michael J. Robinson, Office of the General Counsel, General Motors Corp., Detroit, for appellee General Motors Corp.
ZEHMER, Judge.
Anthony Abraham Chevrolet appeals a final order of the Department of Highway Safety & Motor Vehicles dismissing its second amended petition with prejudice. Appellant contends that its amended petition for an administrative hearing alleged sufficient facts to survive the motion to dismiss, and that section 320.642, Florida Statutes, applies to dealer relocations.
*822 On July 6, 1987, Anthony Abraham Chevrolet (Abraham), a Chevrolet Dealership located in the Miami area, filed a letter of protest with the Department of Highway Safety & Motor Vehicles (Department) in opposition to Collection Chevrolet's (Collection) application to relocate its existing GM car dealership to another area of Miami. The letter (which became the initial petition) alleged that "the proposed location falls within the market area currently being served by [Abraham] and that there has been no showing that the demands of this market area are not being met by [Abraham]." Collection and GM filed a motion to dismiss the initial petition alleging a lack of standing and jurisdiction, and in the alternative, that Abraham failed to comply with the pleading requirements of the Florida Administrative Code. Abraham requested and was granted leave to file an amended petition.[1]
Following Collection's renewed motion to dismiss, the hearing officer entered a recommended order finding that Collection sought a license to relocate its GM dealership from its existing location at 9200 N.W. 27th Avenue between 91st and 95th Streets, to a new location on the south side of Tamiami Trail between N.W. 139th and 143rd Avenues, in Miami. She determined that the relocation would result in the distance between Collection and Abraham being more than doubled, from 4.4 miles to 9.6 miles. The hearing officer also found that "Collection's application is not an initial application, and seeks only a change of physical address. Thus, it is not an application for a new license but an application for relocation." The hearing officer concluded that the internal inconsistency of Abraham's pleadings had "obfuscated the issue to some degree, however, since the map pled on paragraph 1 of the second Amended Petition specifies the Abraham community/territory with geographical precision, it must be accepted as true for purposes of the pending motions over paragraphs 2(a) and (c) which are largely speculative and which define no area" (R. 92).
As a matter of law, the hearing officer concluded that the case was controlled by Stone Buick, Inc. v. Keelan, Inc., DOAH Case No. 84-4475 (Final order entered May 20, 1985)[2], in which it was determined that
if the existing location of a relocation applicant were already in the "community or territory" of the protestant, and if the proposed relocation is within the same "community or territory," then the proposed change of location does not implicate the substantial interests of the protestant, protected within the zone of interests of Section 320.642, Florida Statutes.

(R. 93). She further ruled that no construction of the facts as established by Abraham's map would support its claim to standing as a protestant.

*823 If the area of primary responsibility or community/territory of the applicant (Collection) and the protestant (Abraham) are presently the same and would remain the same with the relocation of Collection, then Abraham has no standing. Alternatively, if the existing area of primary responsibility or community/territory of the applicant (Collection) is already outside the area of primary responsibility or community/territory of protestant (Abraham) and the applicant seeks to move further away from protestant but the move never invades the community/territory of protestant, there logically can be no invasion of protestant's established territory and so Abraham has no standing. Alternatively, if applicant (Collection) is within protestant's (Abraham's) community/territory and seeks to relocate further away and outside of their mutual community/territory, there is likewise obviously no intrusion into protestant's community/territory... . However, it would seem that only if an applicant seeks to relocate from outside a protestant's community/territory to inside it or seeks to relocate closer to the protestant's borders in such a way that applicant's and protestant's communities/territories overlap, can there occur such an intrusion upon protestant's interests or such an "injury in fact," as to create standing in protestant. Although no clear territory/community for applicant Collection now or in its new location has been established, neither does any logical construction of the pleadings establish circumstances which would bring Abraham and Collection within the final scenario which could establish standing in Abraham.
(R. 93-95) (emphasis in the original).
The hearing officer dismissed Abraham's second amended petition with prejudice, concluding that neither § 320.642 nor Fla. Admin. Code Rule 15C-1.08 granted the Department jurisdiction to deny an application for change of address based solely upon the protest of another dealer in the same county, and that economic injury alone to existing dealers was not a cognizable factor under § 320.642. The Department adopted the recommended order as its own and ordered that (1) Abraham's second amended complaint be dismissed with prejudice, and (2) Collection's application for relocation be approved following Collection's compliance with all applicable provisions of § 320.27.
The first issue is whether § 320.642, Fla. Stat. (1985), applies to dealer relocations within the same territory or community.[3] Nothing in the language of the statute precludes application of section 320.642 to dealer relocations in situations such as the one before us. The hearing officer even concedes that Abraham would have standing if it "sought to relocate closer to the protestant's borders in such a way that applicant's and protestant's communities/territories overlap." We hold, therefore, that § 320.642, Fla. Stat. (1985), does apply to dealer relocations within the same statutorily defined territory or community. In making this determination, we note that the legislature recently amended this section to include dealer relocations. See Ch. 88-395, § 12, Laws of Florida. Although that section cannot be retroactively applied to the case before us, it is indicative of legislative intent.
We also hold that Abraham's amended petition sufficiently alleges that Collection's relocation would intrude into its community or territory within the meaning of section 320.642 and, therefore, that Abraham has standing to assert its rights in this administrative proceeding. The hearing officer has wrongly equated the right to prevail on the merits with standing. Although Abraham's pleadings are not a model of clarity, the pleadings sufficiently *824 allege an invasion of its rights under the statute. Any vagueness as to Abraham's community or territory can be resolved by specifying the matters that should be pled with more specificity and ordering that an amended petition be filed.
The hearing officer's conclusion that Abraham's pleadings were internally inconsistent because the map pled in paragraph 1 of Abraham's amended petition defined Abraham's statutory community or territory with precision and conflicted with allegation made in paragraph 2 is also erroneous. Although Abraham's area of primary responsibility with GM is designated by the map, Abraham alleges that a tacit agreement exists with GM in that the area actually served by Abraham is larger than the area depicted in the map. This is a question of fact that must be resolved in an evidentiary hearing and not on a motion to dismiss. Cf. Bill Kelley Chevrolet, Inc. v. Calvin, 308 So.2d 199 (Fla. 1st DCA 1974).
The final order dismissing Abraham's petition for an administrative hearing is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
ERVIN and WENTWORTH, JJ., concur.
NOTES
[1] The amended petition alleges in part:

1. Substantial Interest Affected
Respondent, ANTHONY ABRAHAM CHEVROLET COMPANY, INC., alleges that its substantial interests will be affected by an Agency determination granting Petitioner's request for relocation because COLLECTION CHEVROLET'S proposed new location would adversely affect ABRAHAM'S ability to sell new cars within its well established area of Primary Responsibility designated by Agreement between ABRAHAM and GENERAL MOTORS CORPORATION (see attached Exhibit "A"), thereby resulting in economic injury to ABRAHAM. The injury alleged is within the zone of injury contemplated by Florida Statute 320.642, and the Florida Constitution.
2. Disputed Issues and Material Fact:
a. ABRAHAM has been servicing the area into which COLLECTION proposes to move with the knowledge and consent of GENERAL MOTORS CORPORATION so that said area is not an "open point." GENERAL MOTORS CORPORATION has failed to object to ABRAHAM'S representation in said area, and should now be estopped from doing so.
b. COLLECTION'S change of location of location would have the effect of restricting ABRAHAM'S movement and result on restraint of trade.
c. ABRAHAM is providing adequate representation to its servicing of its territory as a whole. There is no identifiable plot not yet cultivated within the territory within which COLLECTION CHEVROLET proposes to move.
(R. 57-58). Exhibit "A" is a map of the area of "Primary Responsibility" designated by agreement between Abraham and General Motors Corporation.
[2] This decision was not published in Florida Administrative Law Reports.
[3] At the time of the proceedings below section 320.642, Florida Statutes (1985), provided:

The department shall deny an application for a motor vehicle dealer license in any community or territory where the licensee's presently licensed franchised motor vehicle dealer or dealers have complied with licensee's agreements and are providing adequate representation in the community or territory for such licensee. The burden of proof in showing inadequate representation shall be on the licensee.